Steven Wayne Bonilla

J-48500, 3-EY-13

San Quentin, CA 94974

Petitioner

FILED

SEP 1 9 2018

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

United States District Court

Eastern District of California

Steven Wayne Bonilla,

Plaintiff/Petitioner,

vs.

Modoc County, et al.,

Defendants.

Case No. 2:18-CV 02560    KJN PC

The Court has NO POWER OR AUTHORITY in Petitioner's case to lawfully cite 28 USC §1915(g) or Petitioner's representation by counsel (31 Cal.4th 466, 477-478) or any other citings because it lacks Subject Matter Jurisdiction. But it has a DUTY owed to the Petitioner, to pronounce the trial court's Judgment a NULLITY. [27 Cal.300].

In re: to the matter of Steven Wayne Bonilla's Void Judgment rendered by Alameda County Superior Court, Case No. H-12210-A, which Alameda County Court, and all other courts, have refused to take into consideration "AND PROVE THAT THE JUDGMENT IS VOID ON ITS FACE

Independent Suit collaterally Attacking Jurisdiction of Subject Matter and of Person Pursuant to F.R.Civ.P., Rule 60(b)(3) and (4)

-Expedited Review Requested-

-1-

file all in one
new case #
in this slip

# Introduction

The Federal Grand Jury Subpoena, supposed issued February 19, 1988, from which all of the evidence in the case is the fruit, thereof, was never admitted into evidence. Thus, pursuant to Rule 403 of the Evidence Code NONE of the evidence is lawfully admissible. Wherefore, there is NO EVIDENCE/NO LAWFULLY ADMISSIBLE EVIDENCE.

## Claim I - Legal Argument

The court held in Varian v Delfino, [35 Cal. 4th 180], the principle of "subject matter jurisdiction" relates to the inherent AUTHORITY OF THE COURT, involved to deal with the case or matter before it. Thus, in the absence of subject matter jurisdiction, a trial court has NO POWER (nor any court has any lawful authority outside of the limits of the jurisdiction of the court or judge by whom it is issued [21 Howard 506]), to hear or determine the case. And any judgment or order rendered by a court lacking subject matter jurisdiction is void on its face. Therefore, any order or judgment made by this Honorable court which does not reverse the trial court's void judgment is void on its face.

## Claim II - Legal Argument

Where there is no jurisdiction over subject matter there is, as well, no discretion to IGNORE that lack of jurisdiction. See F.R. Civ. P. 12(h)(3), supra note 1. [474 F. 2d 215].

The trial judge has no discretion and must grant appropriate F.R. Civ. P. Rule 60 (b) relief 597 F. 2d 220, 224 n. 8 cited in 573 F. Supp. 341, 344.

When it clearly appears, as it does here with the subpoena not being lawfully admitted into evidence, the COURT HAS NO

1  AUTHORITY, to reach the merits. In such a situation the action
2  should be dismissed for want want of jurisdiction pursuant
3  to the courts holding in Case No 505 F. 2d 1026.
4      A void judgment is a "legal nullity, and a court considering
5  a motion to vacate has no discretion in determing whether
6  it should be set aside pursuant to the holdings in 607 F. Supp. 11, 15.
7      Pursuant to 67 F.R.D. 22, 26, the court is without discretion to
8  IGNORE the lack of subject matter jurisdiction and
9  the mere delaying in raising the issue does not act
10  as a waiver, the issue of subject matter jurisdiction can
11  be raised at trial or after trial.
12      The Court held in In re Carpenter, 9 Cal. 4th 634, that the
13  trial court retains original jurisdiction over subject matter
14  in habeas corpus proceedings, but the trial Courts IGNORES it.
15              Claim III – Legal Argument
16      The court held in Rankin v Howard, 633 F. 2d 844, that the
17  principle of judicial immunity applies when there is jurisdiction
18  of both subject matter and of person. A Judge who acts in clear and
19  complete absence of these jurisdictions loses his judicial
20  immunity. NO subpoena – NO subject matter jurisdiction.
21      The Court held in Williamson, v Berry, 49 US 495, if a judge /
22  court acts without AUTHORITY, (as was done here), its
23  judgments and orders are NULLITIES; they are not voidable
24  but simply void, and FORM NO BAR to a recovery sought
25  even prior to a reversal, in opposition to them; they
26  Constitute NO JURISDICTION, and all persons concerned in
27  executing such judgment, or death sentence, as the judges
28  have done and continue to IGNORE the court's lack of jurisdiction,

-3-

1. is considered in law as trespassers of my guaranteed
2. Constitutional Rights to due process in violation of 18 USC Criminal
3. Codes sections 241 and 242. The judges that have been presented
4. with the Petitioner's challenge to the trial court's lack of
5. subject matter jurisdiction because the February 19, 1988 federal
6. grand jury subpoena was never admitted into evidence, in an independent
7. suit in equity, pursuant to Rule 60(b), F.R. Civ. P, have and continue
8. to commit felonies by ignoring their DUTY to pronounce
9. the trial court's judgment a NULLITY, [27 Cal. 300], It is
10. impossible for them or anyone to show or prove, that the
11. subpoena was lawfully admitted into evidence.
12. Therefore, it is impossible for them to disprove that
13. they have committed repeated felonies in this case.
14. By their refusal and continued delay to correct this
15. miscarriage of justice, makes them acting in concert to
16. aid the conspiracy to execute-murder the innocent
17. Petitioner under the color of law. Which they cannot deny
18. without proving that the subpoena was lawfully admitted
19. into evidence. Which cannot be done.
20.             Claim IV — Legal Argument
21.     The Court held in Melo v United States, 505 F. 2d 1026, that
22. once jurisdiction is challenged, the court cannot proceed
23. when it clearly appears (that the subpoena was not
24. lawfully admitted into evidence), that the court lacks
25. jurisdiction, the court/judge has no AUTHORITY to
26. reach merits, but rather should dismiss the action.
27.     The Court held in Forbes v Hyde (1866) 31 Cal. 342, that a
28. judgment absolutely void upon its face may be attacked

1 ANYWHERE, directly or collaterally, and at any time
2 pursuant to the Court's holdings in Carter v Carter, 148
3 Cal. App. 2d 845. Wherefore, by the preceeding Judges, who
4 had a DUTY, owed to the Petitioner to pronounce the trial
5 courts judgment a NULLITY, without delay, but declined
6 to exercise the jurisdiction which was given to them
7 or usurped that which was not given, by rendering
8 any other order or judgment, which did not reverse the
9 trial courts void judgment, was acting without jurisdiction
10 to aid in THE Prosecution's conspiracy to murder the Petitioner.
11 The one or the other was treason to the Constitution
12 pursuant to the Court's holdings in U.S. v Hill, 498 US 200.
13                         Conclusion
14     Having shown good cause in this entitled case and
15 being without lawfully appointed counsel due to the court's
16 lack of jurisdiction to lawfully appoint one because the
17 federal grand jury subpoena was never lawfully admitted
18 into evidence, the below relief section should be granted in
19 its entirety. The Petitioner, Steven Bonilla, has clarified all claims
20 through prior verified exhibits presented to the court, and
21 through cases cited of well established law, proving factual
22 and bonified prima facie showing, and by most of all, the
23 record itself, which absolutely proves that the federal grand
24 jury subpoena, supposedly issued February 19, 1988, was
25 never lawfully admitted into evidence. For the judges
26 who have claimed that the Petitioner failed to present any
27 exhibits to support his claim are ignorant to the fact
28 that which is mentioned or cited in a petition is included

-5-

in its entirety, as being presented with the petition whether
it being a case citing or the record itself. Therefore, by
referring to the record in the petition, it made the entire
record a part of the petition. Thus, the Petitioner has
presented absolute, indisputable proof that the trial
court never acquired jurisdiction of subject matter
and of person. For the judges who are not aware of the law
governing jurisdiction of subject matter and of person;
which was establish in 1866-1867, [30 Cal. 439, 33 Cal. 505],
that when the judgment is attached collaterally, (in an
independent suit in Equity), the jurisdiction of the
court "MUST BE DETERMINED BY THE RECORD ALONE."

The court held in Nagel v P&M Distributors, 273 Cal.
App. 2d 176, that when a judgment or order is void on its face
and which requires only an inspection of the judgment
roll or record to show its invalidity, it may be set on
motion at any time after its entry by the court which
rendered the judgment or made the order. Because, as
a matter of law, that which is referred to in the
petition becomes part of the motion presented to the
court. So by Judge Clay and Judge Horner being presented
with the petition, that MUST include the record, which
ALONE determines the jurisdiction of the judgment, thus,
Judge C. Don Clay and Judge Jeffrey W. Horner, have in in fact
inspected the record, along with all other judges that
were presented with the motion attacking the trial court's
lack of jurisdiction, which shows the invalidity of
the judgment. Which makes it simply a ministerial

1 DUTY, owed to the Petitioner, to pronounce the trial
2 court judgment a "NULLITY" as determined by the record
3 ALONE, and not the judge. The failure/refusal of Judge
4 Clay/Judge Horner (trial court replacement judges), to have
5 performed this ministerial DUTY, owed to the Petitioner, is
6 absolute proof that they are acting in concert, as
7 coconspirators to murder the Petitioner, under the Color
8 of Law in violation of the Clean Hands Doctrine, [290 US 240],
9 which holds, for the Court/Judge to aid the Prosecution in
10 such a case of FRAUD AND DECEIT, makes the Court/Judge
11 THE ABETTOR OF INIQUITY.

Relief Sought

13 (i). The innocent Petitioner who has been enslaved
14 for the past thirty (30) years due to the Prosecution's
15 FRAUD AND DECEIT, DEMANDS what he is owed by the court,
16 as a matter of law, pursuant to the interest of Justice. That
17 the court perform its MINISTERIAL DUTY, to pronounce
18 the judgment a "NULLITY." Since it has been determined and
19 absolutely proven by the record which ALONE, makes the
20 determination, as a matter of very old and well established
21 law which leaves only the court/judge, with the MINISTERIAL
22 DUTY to perform that which is owed to the Petitioner, to simply
23 pronounce the judgment a "NULLITY." For the Judge to
24 decline to perform this MINISTERIAL DUTY in exercising
25 the jurisdiction which was given to him by the
26 Constitution, that he swore an oath to uphold the
27 Constitution and its laws, would be committing
28 TREASON TO THE CONSTITUTION.

-7-

(2). Which demands the immediate release of the innocent Petitioner from his unlawful imprisonment and involuntary servitude/slavery. [356 F. 2d 654].

(3). Demanding the recusal of Judge (s)/Defendant(s) from the case for cause/conflict of interest. They have [KNOWINGLY] committed acts of TREASON TO THE CONSTITUTION. For them to now reside over a VETERAN who served his country Honorably in time of WAR and has been loyal to his oath given to this great country, it would be disrespectful to all VETERANS who have been loyal to the Constitution that we swore to protect to now be ruled upon by a TREASONIST, which they cannot deny, as proven by the record and their failure to preform their ministerial duty to pronounce the trial judgment a "NULLITY".

(4). The Petitioner demands that the court request a full and complete investigation by the United States Department of Justice into the Conspiracy by the federal and state agents involved in fraudulently fabricating the February 19, 1988 federal Grand Jury Subpoena, so as to use it in executing-murdering the innocent Petitioner under the color of law and authority, in violation of 18 USC Criminal Code sections 241 and 242. And to investigate all those on the bench who have committed acts of TREASON TO THE CONSTITUTION in order to aid in concert with the Prosecution's Civil Conspiracy to fraudulently frame on innocent citizen to applease the news media. Should the defendant rule on this petition, then it should be considered another act of TREASON on their part.

-8-

(5). To Compel Francie Koehler and Randy Ontiveros to disclose, in a declaration, the name of the telephone company employee who sold them the Petitioner's telephone records in violation of § 2891 of the Public Utility Code.

(6). The Innocent Petitioner demands, as a matter of law and in the interest of Justice for the Court to immediately order a Bench Trial to correct this 30 (thirty) years of miscarriage of justice and for the Petitioner to be present at such a trial to rebut any further applications of rules or law that does not apply to a void judgment, When it is void on its face; it is simply a NULLITY, and can be neither the basis nor evidence of any right whatever, pursuant to the Court's holdings in Nagel v. FM, 273 Cal. App. 2d 176.

(7). For the Court to grant any and all relief this Honorable Court deems necessary and just for the 30 (thirty) of miscarriage of justice committed by federal and state agents in their Civil Conspiracy to execute-murder the innocent Petitioner, Steven Wayne Bonilla, under Color of Law and Authority, to appease the news media.

## Verification

I declare under penalty of perjury that the foregoing is true and correct; including the record and other exhibits mentioned in this petition pursuant to 28 USC § 1746.

Dated: September 9, 2018

Respectfully Submitted

Steven Wayne Bonilla

1 | Steven Wayne Bonilla
2 | J-48500, 3-EY-13
3 | San Quentin, CA 94974
4 | Petitioner
5 |
6 |
7 |
8 | United States District Court
9 | Eastern District of California
10 |
11 | Steven Wayne Bonilla,          Case No.
12 | Plaintiff / Petitioner,
13 |            vs.              Independent Suit In Equity
14 | Judge Francis W. Barclay      Challenging Void Orders and
15 | and Modoc County Court        Judgments in acts of TREASON
16 | Clerks, John Does 1-15        to the Constitution.
17 | Defendants                   [273 Cal. App. 2d 752].
18 |
19 |                              [Demand For Bench Trial, and
20 |                              to be Present at Such Trial]
21 |
22 |                              — Expedited Review Requested —
23 |
24 |
25 |
26 |
27 |
28 |

— 1 —

# Introduction

Petitioner, Steven Wayne Bonilla, comes before this Honorable court in demand of a Bench Trial, and to be present at such trial. Petitioner is requesting this for the purpose of presenting his valid claims which are bolstered by verified documents in evidence.

A Bench Trial would serve several purposes. One being to preserve the Court's limited time and for judicial economy. And to limit motion pleadings to a bare minimum, again for judicial economy of the Court's limited time. A Bench Trial would also give the Petitioner the ability to properly present his case in a hearing which he has never had and to arguendo if necessary Petitioner's verified valid documents, including the record itself, and case law, in support of his entitled case and cause. Having a Bench Trial, in pursuant to the Court's holdings in Thomas v. Teets, 205 F. 2d 236, would ensure Petitioner's Due Process and meaningful acces to the court considering there has never been a hearing on the trial court's lack of jurisdiction of subject matter and of person. Which has only been ignored by the judges. The Court/Judge has a DUTY to prove, on the record, jurisdiction exist, by determining whether or not the February 19, 1988 federal grand jury subpoena was admitted into evidence. The Court cannot lawfully proceed ANY FURTHER until jurisdiction is determined [67 F.R. D. 22, 25].

# Claim I - Legal Argument

In 1821 the Court held in Conn. v Virginia, 6 Wheat 264, and again in U.S. v Hill, 499 U.S. 200, that Judges have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one

1  or the other would be TREASON to the Constitution.

2  In 1859 the court held in Ableman v Booth, 21 Howard 506,

3  that, no judicial process whatever form it may assume,

4  can have any lawful authority, outside of the LIMITS of

5  the jurisdiction of the court or judge by whom it is issued;

6  and any attempt to enforce it beyond these boundaries

7  is nothing less than lawless violence.

8  In 1850 the court held in Williamson v Berry, 49 US

9  495, that if a court/Judge acts without authority, its

10  judgments and orders are NULLITIES; they are not

11  voidable but simply void, and form NO BAR to a

12  recovery sought even prior to a reversal, in opposition

13  to them; they constitute NO JURISDICTION, and all

14  parties concerned in executing such judgments, or

15  sentences, are considered in law as thespassers (on

16  ones guaranteed Constitutional Rights) [18 USC §241, 242]

17  A void judgment is a legal NULLITY and a court

18  considering a motion to vacate has no discretion in

19  determining whether it should be set aside [67 F. Supp. 11].

20  A court has no discretion in a motion made pursuant to

21  Rule 60 (b)(4), F.R.C.P, because a judgment is either

22  VOID OR IT IS NOT. [691 F. 2d 1, 2].

23  The Court held in Thomas v Teets, 205 F. 2d 236, the

24  court is required to assume verified allegations and

25  exhibits are true. Wherefore, if an applicant for habeas

26  corpus is denied without issuing the writ or without issuing

27  an order to show cause, he has been denied due process.

28  And failing to be present at the hearing on his motion to

1  vacate judgment, is a violation of due process clause
2  of the Fifth Amendment. [201 F. 2d 174, 175].
3                  Claim II - Legal Argument
4      The decision to grant relief under Rule 60 (b)(4), F.R.C.P, is
5  not discretionary. The sole function of the Reviewing Court
6  is to decide whether the earlier judgment is void because the
7  rendering court lacked jurisdiction. IF VOIDNESS IS FOUND
8  RELIEF IS MANDATORY. (trial judge has no discretion and
9  MUST grant appropriate Rule 60 (b) relief, pursuant
10  to the Court's holdings in Case No [573 F. Supp. 341, 344].
11                  Claim III - Legal Argument
12      In 1865 the Court held in McMinn v Whelan, 27 Cal. 300, if it
13  appears by the record as the Petitioner has verified, that
14  the February 19, 1988 federal grand jury subpoena was never
15  admitted into evidence, then the court/and the trial Court,
16  never acquired jurisdiction of subject matter and of
17  person; Because NONE of the proffered evidence is law-
18  fully admissible pursuant to Rule 403 of the Cal. Evidence
19  Code. This is so whether the verified, sworn allegations
20  of the Petitioner challenging the court's lack of jurisdiction
21  comes or made directly, in any type of pleading
22  or made in a collateral INDEPENDENT SUIT IN EQUITY,
23  when the record shows the judgment lacks
24  subject matter jurisdiction, the court has a DUTY,
25  owed to the Petitioner, TO PRONOUNCE THE JUDGMENT A
26  NULLITY, and this is so whether the Reviewing Court
27  be of inferior or superior jurisdiction, NO matter in
28  what form of pleading the challenge to the courts

jurisdiction is presented to the court, the court can neither
ignore the challenge of its authority, nor lawfully
proceed further until proving on the trial courts record
that it acquired jurisdiction. That the February 19, 1988
subpoena, from which all of the evidence in the case was
the fruit, thereof, was admitted legally into evidence.
Otherwise, the Reviewing Court lacks authority to
render any order or judgment and its jurisdiction is
limited to only reversing the trial court's void acts,
(Judgment). [474 F. 2d 275; 116 F. 2d 449, 453; 35 Cal. 4th 180].
A void order or judgment is subject to collateral attack
at any time and in any place, [148 Cal. App. 2d 845], and a
party cannot be precluded, for any reason, from raising
the question of the court's jurisdiction, [67 F.R.D. 22, 25].
The Reviewing Court may dismiss a case for lack of
jurisdiction at any stage of the proceeding. [495 F. 2d 906].

Claim IV - Legal Argument

Pursuant to the Court's holding in 67 F.R.D. 22, 25, the Court
cannot proceed ANY FURTHER until the question of
jurisdiction is proven, on the record, by showing that the
February 19, 1988 subpoena was lawfully admitted into evidence,
which cannot be done because the subpoena was never
lawfully admitted into evidence, as verified, under oath,
by the Petitioner, under penalty of perjury. Therefore,
this Reviewing Court's jurisdiction is LIMITED to only
reversing the trial court's void judgment.

Claim V - Legal Argument

By defacto, the defendant has refused and declined to

-5-

1 exercise the jurisdiction which was given to the
2 defendant to reverse the trial courts void judgment.
3 WHICH IS A DUTY OWED TO THE PETITIONER. But instead
4 usurped that jurisdiction which was not given by
5 rendering decision(s) without lawful authority and
6 without jurisdiction of subject matter and of person to
7 aid and in concert with the Prosecution's Civil Conspiracy
8 to execute-murder the Petitioner under Color of authority
9 and Law to appease the news media [See Exhibit A].
10 Which were both acts of TREASON pursuant to the
11 Court's holdings in Conn. v Virginia (Id) and U.S. v Hill
12 (Id). Judges that are clearly at WAR WITH THE CONSTITUTION, as
13 shown here, should not be allowed to use the Bench to
14 commit their acts of TREASON TO THE CONSTITUTION in
15 violation of the oath they took in violation of 18 USC §241, 242.
16 It is well established law that a Judge is liable for acts
17 committed to the damages of the Plaintiff/Petitioner
18 where he has no jurisdiction at all in a particular case [217
19 Miss 576]. By the defendant precluding the Petitioner from
20 raising the question of jurisdiction by ruling without
21 jurisdiction of subject matter and of person or unlawfully
22 transferring the case to the ignoring Alameda County, the
23 defendant has joined and actively participated in concert
24 with the Prosecution's Civil Conspiracy became liable for the
25 previous acts of his coconspirators and for the overt acts
26 done pursuant to the common design of the Conspiracy [53 C 2d
27 643], to execute-murder the Petitioner to appease the news
28 media. Therefore, the defendant is liable for Judge C. Don Clay's bogus ruling.

## Claim VI – Legal Argument

Steven Wayne Bonilla
Plaintiff/Petitioner
vs
Judge C. Don Clay,
Alameda County,
John Doe 1-15,
  Defendants

In re: to the matter of
Steven Wayne Bonilla's
Void Judgment rendered
by Alameda County
Superior Court, Case
No. H-12210-A, which
they refuse to take
into consideration
and prove otherwise

The Void Judgment is being
challenged in this Independent
Suit in Equity. [273 Cal. App. 2d 752].

Therefore, this Reviewing Court's
jurisdiction/authority is LIMITED
to Reversing the trial court's Void
Judgment. Any other order or
Judgment by this Court, without
proving that the February 19, 1988
subpoena was admitted into
evidence, is void on its face for
lack of subject matter jurisdiction.
[35 Cal. 4th 180]. Wherefore, this Court
has a DUTY owed to the Petitioner
to pronounce the Void Judgment a
NULLITY. [27 Cal. 300]. Demanding
to be present at a Bench Trial.

A party cannot be precluded nor barred for
any reason from raising the question of
jurisdiction. [67 F.R.D. 22, 25; 49 CJS 495] at any time
and in any place. [148 Cal. App. 2d 845].

-7-

# Introduction

Judge C. Don Clay of Alameda County Superior Court in Case No. H-12210-A has refused and failed to prove that the court ever acquired jurisdiction of subject matter and of person. As shown by the record, the court never acquired jurisdiction, because NONE of the proffered evidence of the February 19, 1988 federal grand jury subpoena, from which all of the evidence in the case is the fruit thereof, was never admitted into evidence. Thus, pursuant to Rule 403 of the Cal. Evidence Code, NONE of the proffered evidence is lawfully admissible evidence. With there being no subject matter, as proven by the record's lack of the subpoena having been admitted into evidence, there can be no subject matter for the court to have lawfully rendered the judgment, proving that the judgment is void on its face. The Court held in Textile Banking v Rentschler, [657 F.2d 844, 850], that IF VOIDNESS IS FOUND, RELIEF IS MANDATORY. (trial judge has (had) no discretion and MUST grant appropriate Rule 60(b) relief). Cited in [573 F. Supp. 341, 344].

## Claim I - Legal Argument

The court held in Hickory v Roby, 273 Cal. App. 2d 752, when a judgment has been obtained through FRAUD, it may be set aside THOUGH LONG SINCE FINAL, by an INDEPENDENT SUIT IN EQUITY or by motion in the principal proceeding who has been deprived of an opportunity to present his case or obtain a fair adversary proceeding. Pursuant to the court's holdings in In re Carpenter, 9 Cal 4th 634, the trial court retains original jurisdiction over subject matter in habeas corpus proceedings.

-8-

Petitioner was deprived of the opportunity of presenting;

(1). that there is no subject matter nor subject matter jurisdiction because the February 19, 1988 federal grand jury subpoena was never admitted into evidence. Thus, pursuant to Rule of the Cal. Evidence Code, NONE of the proffered evidence is lawfully admissible. Therefore, there can be no jurisdiction of subject matter and of person for the trial court to lawfully render judgment.

(2). One does not knock out a victim's teeth, (See Exhibit B), and crush his nose flat, when his mouth is duct taped shut and his handcuffed behind his back in a deliberate act of premeditated murder. It was Brad Keyes punch the victim repeatedly in the face after he had been subdued. Which resulted in the victim's accidental death. Which Brad Keyes deliberately omitted from his false an fabricated testimony accusing William Nichols of suffocating the victim to death. Obviously, the act of suffocating someone to death does not include knocking out 7 (seven) of his teeth (See Exhibit B) and literally crushing his nose. Which is why Brad Keyes deliberately and intentionally omitted from his testimony that he had repeatedly punched the victim in the face after he had been subdued, which makes Brad Keyes false and fabricated testimony, accusing William Nichols of suffocating the victim to death, contradicted by these withheld facts NOT presented to the jury. All of these facts were [KNOWN] to the Prosecutor, Jonathan Goodfellow, but he chose to COMMIT FRAUD UPON THE COURT by presenting Keyes' false and fabricated testimony to the jury to appease the news media. [See Exhibit A]. Therefore, this Reviewing Court has a DUTY to pronounce the judgment a NULLITY and to immediately release the innocent Petitioner from

his false imprisonment. [27 Cal. 300; 35 Cal. 4th 180].

Claim II - Legal Argument

Judge C. Don Clay of the Alameda County Superior Court,
August 2, 2018 ruling, (See Exhibit C), [FALSELY]
claimed that:

"Currently, there is no criminal proceeding before
this (trial) court. A motion is not an independent remedy;
it is ancillary to an on-going proceeding. After judgment
has become final, there is nothing pending to which
this motion may attach. Here, there are no pending criminal
proceeding and Defendant's judgment was final in 2007...
Therefore, Defendant is not entitled to relief sought."

In short, the Defendant is not entitled to relief from
a void judgment for a crime of premeditated murder
that never took place.

A party cannot be precluded from raising the
QUESTION of JURISDICTION at any time and in any place for any
reason. [67 F.R.D. 22, 25; 148 Cal. App. 2d 845; 49 US 495; 273 Cal. App. 2d 176].
The court held in Case No. 573 F. Supp. 341, 344, that the victim
to grant relief under Rule 60 (b) of the Federal Rules of Civil
Procedure is not discretionary. The sole function of the
Reviewing Court is to decide whether the earlier judgment
is void because the rendering court lacked jurisdiction.
[83 F.R.D. 556, 559]. IF VOIDNESS IS FOUND, RELIEF IS
MANDATORY. [657 F. 2d 844, 850]; (TRIAL JUDGE HAS NO
DISCRETION AND MUST GRANT APPROPRIATE RULE 60 (b)
RELIEF. [597 F. 2d 220, 224 n. 8];

Claim III - Legal Argument

Judge C. Don Clay's August 2, 2018 ruling leaves no doubt that he has avoided answering and proving that the trial ever acquired jurisdiction of subject matter and of person. By his VOIDNESS, he has and continues / Conspiracy willingly, by unlawful rulings, to aid the Prosecution to murder-execute the Petitioner. Which is [KNOWN] by all mentioned parties involved, previously filed with the court; to be innocent beyond any reasonable doubt. All said criminal acts [KNOWN] to be unlawful, and are/were perpetrated under Color of Law to deprive the Petitioner of his life, and his guaranteed Constitutional Right to Due Process, Equal Protection of the Law, and meaningful access to the Court. No lawful jurisdiction of subject matter nor of person was, nor has ever been established on the record because no such subpoena, supposedly issued, February 19, 1988 ever existed. As admitted by the Federal Bureau of Investigation (FBI), and the United States District attorney's Office, under oath, in declarations pursuant to a Court order in federal case No. C-02-0636 MHP, which by defacto, with Prosecutors in violation of 18 USC Criminal Code §241, 242; 42 USC § 1981, 1983, 1985, 1986, and California Penal Cod § 182, and a clear showing of OBSTRUCTION OF JUSTICE by Judge C. Don Clay's August 2, 2018 ruling.

Conclusion

Having shown good cause in this entitled case the below relief section should be granted in its entirety. The Petitioner has clarified all claims through prior verified exhibits presented to the court and through cases cited of established law providing factual and bonified prima facie showing.

Relief Sought

(1). For the Court to order a Bench Trial forthwith and for the Petitioner to be present at such trial.

(2). To immediately, [WITHOUT DELAY], issue an order to show cause pursuant to the court's lack of jurisdiction of subject matter and of person.

(3) When the court records, as verified by the Petitioner, shows that the February 19, 1988 federal grand jury subpoena was not lawfully admitted into evidence, the court MUST pronounce the trial court's judgment and all other court orders and judgments pertaining to the court's lack of jurisdiction be pronounced NULLITIES.

(4). Followed by immediately releasing the innocent Petitioner from his unlawful imprisonment and 30 years of involuntary servitude pursuant to [356 F.2d 654].

(5). To request a full and complete investigation by the Department of Justice into all criminal acts by state and federal agents in the conspiracy to execute-murder the Petitioner under color of law and authority, in violation of 18 USC § 241 and 242.

(6). To compel Francie Koehler and Randy Ontiveros to disclose the name of the telephone company employee who sold them the Petitioner's telephone records.

(7). To grant any and all relief this Honorable Court deems necessary and just for the miscarriage of justice committed by state and federal agents.

Verification

I declare under penalty of perjury that the foregoing is true and correct including exhibits and all prior exhibits submitted to the court, pursuant to 28 USC § 1746.

Dated: September 1, 2018                    Respectfully Submitted
                                            Steven Wayne Bonilla

*EXHIBIT A*

Declaration Of Reverend Gregory Kuehn

I, Reverend Gregory Kuehn, hereby declare as follows:

1. My name is Reverend Gregory Kuehn, I am the Pastor of the Sierra Bible Church in Reno, Nevada, and I briefly provided Bradley Keyes with spiritual counseling just prior to his surrender to the authorities in Pleasanton, California, in 1988. I also testified at Mr. Bonilla's trials in 1992 and 1994.

2. I met Mr. Keyes through his wife's family members, who were parishioners at the church. Mr. Keyes was a member of our congregation for a short period of time right before turning himself into police custody for the killing of Jerry Harris. At Mr. Keyes request, I drove with him from Reno, Nevada, to Pleasanton, California, where I accompanied him into the building where he surrendered himself.

3. During Mr. Keyes surrender and booking, I had the opportunity to meet and speak with Assistant District Attorney Jon Goodfellow. At one point I was alone with Mr. Goodfellow in a room at either the District Attorney's office or a police station. It was during this time that Mr. Goodfellow revealed to me his intention to seek the death penalty against Steven Bonilla and his co-defendant, Williams Nichols.

4. When I asked Mr. Goodfellow why he felt it was necessary to use the death penalty in the prosecution of this crime, he told me that he needed to get the critics of the district attorney's office off his back. Mr. Goodfellow went on to explain that his office was being scrutinized for its use of the death penalty against minority defendants and that they needed to put "more white people" on death row to balance the population disparities and silence the critics. According to Mr. Goodfellow, his office would not have otherwise sought the death penalty against either Mr. Bonilla or Mr. Nichols.

5. This discussion that I had with Mr. Goodfellow never came up during my previous conversations with anyone because no one asked me about it and I didn't think it was important. Herbert Duzant, an investigator with the Federal Public Defender office, was the first person to ask me whether Mr. Goodfellow ever mentioned the reasoning behind the District Attorney Office's decision to seek death against Mr. Bonilla. Had I been asked earlier, I would have provided Mr. Bonilla's previous representatives with the same details and I would have testified to it on the stand at both trials.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and that this declaration was executed in Washoe County, Nevada, on June 30, 2014.

_____
Reverend Gregory Kuehn

EXHIBIT B

**INSTRUCTIONS:**
1. MARK LOCATION OF WORK ON TOOTH SURFACE.
2. GIVE DESCRIPTION OF WORK DONE, MISSING TOOTH, FILLING, ETC., ON LINE CORRESPONDING TO TOOTH NUMBER
3. PENCIL IN IDENTIFYING ROOT STRUCTURES FOR INDIVIDUAL TEETH.

SEX



UPPER RIGHT — UPPER LEFT (teeth 1–16)

1  MISSING  ANTEMORTEM
2  PORCELAIN FUSED TO METAL CROWN — BRIDGE ABUTMENT
3  MISSING ANTEMORTEM — PORCELAIN FUSED TO METAL CROWN
4  PORCELAIN FUSED TO METAL CROWN — BRIDGE ABUTMENT
5  MOD AMALGAM
6  DISTAL AMALGAM
7
8

16  MISSING ANTEMORTEM
15  OCCLUSO-LINGUAL AMALGAM BUCCAL AMALGAM
14  MISSING ANTEMORTEM
13
12  PORCELAIN FUSED TO METAL CROWN
11  DISTAL AMALGAM
10  MESIAL COMPOSITE
9



LOWER RIGHT — LOWER LEFT (teeth 17–32)

32  IMPACTED 3RD MOLAR
31  FULL CAST METAL CROWN SILVER COLOR - ROOT CANAL
30  MESIO-OCCLUSO-DISTAL AMALGAM
29  DISTO-OCCLUSAL AMALGAM
28  .
27
26  PORCELAIN FUSED TO METAL CROWN — BRIDGE ABUTMENT
25  MISSING ANTEMORTEM

17
18  MISSING ANTEMORTEM
19  FULL CAST GOLD CROWN
20  DISTO-OCCLUSAL AMALGAM
21
22
23  PORCELAIN FUSED TO METAL CROWN — BRIDGE ABUTMENT
24  MISSING ANTEMORTEM — PORCELAIN FUSED TO METAL CROWN

GREG V. DOWNING JDS
LOUIS U PATETTA DDS
COMPLETED BY ___

CORONERS CASE # OC43-88A
JOHN DOE
DDS          DATE JAN 12 1988

DNIC17619

CA-ACPD03133

HARRIS, Jerry L.
0045-88-A

2

label Aero. There is a tan sock on the right foot. The left foot
is covered by a tan sock. Also received with the body but no
longer adherent to the body are a pair of white shorts with the
label Nordstrums size 34. There is extensive tearing of the
lateral aspect of these shorts.

EXTERNAL EXAMINATION:

The head shows extensive mummification. The right and left ears
are mummified with extensive adherent dirt and sand. The eyes
show extensive caked dirt and sand. The nose is markedly
flattened. The teeth are in moderately good repair. The second
molar is missing on the left lower jaw. There is a complete crown
on the first left molar. There is also a silver type filling in
the first molar. There is also a silver filling on the right
first molar and a crown on the right second molar. On the upper
jaw there is a crown on the right back molar. The left second
molar is missing. The lower jaw shows an impacted third molar on
the right. The hair is light brown and measures up to 5 cm. in
length. There are scattered streaks of gray intermixed among the
light brown hair. The hair has been peeled back over the right
parietal region and right frontal region and the left temporal
region of the head. The chest shows adherent gray chest hair.
There is extensive decomposition and mummification of the skin
over the chest. There is also adherent sand and dirt. The
abdominal cavity is open with there being a 16 cm. X 25 cm.
defect in the skin over the abdomen. The underlying viscera are
exposed. The genitalia show a shrunken scrotum and shrunken
penis. There is extensive mummification of the genital organs.
The right lower extremity shows extensive mummification of the
skin. There is adherent dirt and sand. The left lower extremity
shows complete exposure of the left femur and the lateral aspect
of the left pelvis. The superior aspect of the left tibial bone
is exposed however there is adherent skin and soft tissue to the
inferior portion of the left lower leg. The feet are intact. The
posterior aspect of the head in the right occipital region shows
gray plastic material resembling duct tape adherent to the hair.
This adherent material measures 4.2 cm. X 3.5 cm. X 0.3 cm. in
dimension. Examination of the back shows no perforations or
defects in the skin. There is a scar in the right lower quadrant
approximately at the level of the right pubic ramus. This scar
measures 6.5 cm. in length. There is also a scar over the lateral
aspect of the right pelvic bone approximately 5 cm. inferior to
the superior anterior iliac spine. This scar measures 7.3 cm. in
length. There is a chain around the neck which has a pendant
consisting of a coin with an Indian head emblem on one surface.
The right upper extremity shows mummification and extensive
adherent sand and dirt. No identifying marks are noted. On the
left upper extremity there is extensive decomposition change and
mummification. There is extensive adherent sand and dirt. No
identifiable marks or defects are seen. After reflecting the skin
from the chest the medial aspects of the 12th, 11th, 10th, and
9th ribs are absent. A missile is recovered from the right
perivertebral muscle at approximately the level of S-1. This
missile measures 1.0 cm. in length X 0.4 cm. in diameter. No

*EXHIBIT C*

ENDORSED
FILED
ALAMEDA COUNTY

AUG 2 2018

CLERK OF THE SUPERIOR COURT
By Shay Ryans, Deputy

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## COUNTY OF ALAMEDA

THE PEOPLE OF THE STATE OF
CALIFORNIA,
        Plaintiff and Respondent,

v.

STEVEN WAYNE BONILLA,
        Defendant and Petitioner..

No. H12210A

ORDER DENYING MOTION

      This court having reviewed the ex parte motion, filed on July 30, 2018, by
STEVEN BONILLA *in propria persona*, NOW HEREBY ORDERS:

      The Motion is DENIED.

      Currently, there are no criminal proceedings pending before this court.
(*People v. Picklesimer* (2010) 48 Cal.4th 330, 337-338; *People v. Ainsworth*
(1990) 217 Cal.App.3d 247, 251; *People v. Sparks* (1952) 112 Cal.App.2d 120,
121.) A motion is not an independent remedy; it is ancillary to an on-going
proceeding. (*Lewis v. Superior Court* (2008) 169 Cal.App.4th 70, 76–77.) After
judgment has become final, there is nothing pending to which this motion may
attach. (*Ibid.*) Here, there are no pending criminal proceedings and Defendant's
judgment was final in 2007. (*People v. Bonilla* (2007) 41 Cal.4th 313.)

      Therefore, Defendant is not entitled to the relief sought.

DATED: _____

_____
HON. C. DON CLAY
JUDGE OF THE SUPERIOR COURT

1  Steven Wayne Bonilla
2  J-48500, 3-EY-13
3  San Quentin CA 94974
4
5
6        United States District Court
7        Eastern District of California
8
9  In re; to the matter of        Case No.
10 Steven Wayne Bonilla's
11 Void Judgment rendered         18 U.S.C. § 1361 Demands
12 by Alameda County              this Honorable Court to compel
13 Superior Court, Case No.       Judges to perform a DUTY owed to
14 H-12210-A, which Alameda       Steven Wayne Bonilla to Vacate
15 County Court, and all other    the Void Judgment and to
16 County Courts, have refused    immediately release him
17 to take into consideration     from his false and
18 "AND PROVE OTHERWISE" that     unlawful imprisonment
19 the JUDGMENT IS VOID
20 ON ITS FACE.                   - Expedited Review Requested-
21
22                Introduction
23    As sworn to and verified by the Petitioner, Steven
24 Wayne Bonilla, and supported by the record itself,
25 all of the evidence in the case is the fruit of a
26 federal grand jury subpoena, supposedly issued
27 February 19, 1988, that was never admitted into
28 evidence. Thus, pursuant to Rule 403 of the

                        -1-

1  Evidence Code of California, NONE of the proffered
2  evidence is lawfully admissible
3              Claim I - Legal Argument
4     When judgment is attacked collaterally, jurisdiction
5  of the court must be determined by the record ALONE.
6  [Sharp v Daugney (1867) 33 Cal. 505]
7     Where lack of jurisdiction appears upon face of
8  record, judgment to that extent is void on its face
9  and may be vacated at any time [62 Cal. app. 753; 95 F.
10 Supp. 962].
11    Judgment absolutely void upon its face may be
12 attacked anywhere directly or collaterally, either by
13 parties or strangers. [Forbes v Hyde (1866) 31 Cal. 342].
14    Void order or judgment is subject to collateral attack
15 at any time and in any place [Carter v Carter, 148 Cal. app. 2d 845]
16    As in this case, with there being NO LAWFULLY
17 ADMISSIBLE EVIDENCE, any judgment or order rendered
18 by a court lacking subject matter jurisdiction is
19 void on its face. [Varian v Delfino, 35 Cal. 4th 180].
20    Federal Rules of Civil Procedure, Rule 12 (h) (3) provides
21 that whenever it appears by suggestion of the parties
22 or otherwise that the court lacks jurisdiction of the
23 subject matter, the court shall dismiss the action.
24 A court lacking jurisdiction cannot render judgment
25 but "MUST" dismiss the cause at any stage of the
26 proceeding in which it becomes apparent that jurisdiction
27 is lacking. [495 F. 2d 906].
28    Subject to a void judgment being collaterally attacked

at any time and in any place, the reviewing court's jurisdiction is limited to reversing the trial court's void acts / judgment. [Varian v Delfino, 35 Cal. 4th 180].

## Claim II - Legal Argument

This presentation with all supporting verified evidence, (the record itself), clarifies our Federal and state courts have attempted and in many cases have OBSTRUCTED, DELAYED, CIRCUMVENTED, AND CREATED OBSTACLES RELATED TO ADDRESSING AND CORRECTING THE ISSUE AT BAR.

A judge's oath of office to obtain vested authority is founded upon "Equal application of compliance to Demands, DUTIES, OBLIGATIONS to the Constitution and Laws. To "IGNORE" the DUTIES owed by vested authority underminds the Constitution and Laws of the United States and perpetrates a FRAUD UPON THE COURTS. This may well establish acts of TREASON or violations of the Patriot Act.

It is a principle in chancery, that he who asks for relief must have acted in good faith. The equitable powers of the court can never be exercised in behalf of one who has acted fraudulently or who by deceit or any unfair means has gained an advantage. (By claiming all of the evidence in the case being the fruit of a subpoena which never existed nor was it ever admitted into evidence). To aid a party in such a case would make the court the abettor of iniquity. [290 US 240].

-3-

All of the Judges/Courts presented with the collateral attack on the trial courts lack of jurisdiction, shown on the face of the record, have abused their vested authority, which commands accountability, for failure - refusals to accept rules, oath and DUTIES invoked and Demanded by Laws of the United States of America. [See Furman v. Georgia, 408 US 238; 33 L. Ed. 2d 346; 92 S. Ct. 2726].

## Conclusion

Having shown good cause in this entitled case and being without lawfully appointed counsel due to lack of jurisdiction, the below relief section should be granted in its entirety. The Petitioner has clarified all claims through prior verified exhibits presented to the court and through cases cited of well established law proving factual and bonified prima facie showing. And by most of all, the record itself, which absolutely proves that the Federal Grand Jury Subpoena, supposedly issued February 19, 1988 was never admitted into evidence.

## Relief Sought

(1). For the Court to immediately order a Bench Trial to correct this miscarriage of justice and for the Petitioner to be present at such trial.

(2). To immediately issue an order to show cause based on the court's lack of jurisdiction due to the Federal grand jury subpoena, dated February 19, 1988 was not lawfully admitted into evidence.

(3). When the court records are inspected as verified by

-4-

1 the Petitioner, showing that the February 19, 1988 federal
2 grand jury subpoena was never lawfully admitted into
3 evidence, pursuant to the Court's holdings in McMinn v
4 Whelan (1865) 27 Cal. 300, the court MUST pronounce the
5 trial court's judgment a NULLITY.
6    (4). Which demands the immediate release of
7 the innocent Petitioner from his unlawful
8 imprisonment and involuntary servitude. [356 F.2d 657].
9    (5). To request a full and complete investigation by the
10 U.S. Department of Justice into the conspiracy by the
11 federal and state agents involved in fraudulently
12 fabricating the February 19, 1988 federal grand jury
13 subpoena so as to execute-murder the innocent
14 Petitioner under color of Law and authority, in
15 violation of 18 U.S.C. § 241 and 242.
16    (6). To compel Francie Koehler and Randy Ontiveros
17 to disclose, in a declaration, the name of the telephone
18 company employee who sold them the Petitioner's
19 telephone records in violation of § 2891 of the Public Utility Code.
20    (7). To grant any and all relief this Honorable Court deems
21 necessary and just for the miscarriage of just committed
22 by state and federal agents in their conspiracy to execute-
23 murder the innocent Petitioner under the Color of Law.
24                    Verification
25    I declare under penalty of perjury that the foregoing is true
26 and correct pursuant to 28 USC § 1746 on September 5, 2018.
27                    Respectfully Submitted
28                    Steven Wayne Bonilla

-5-

1  Steven Wayne Bonilla / Petitioner

2  J-48500, 3-EY-13, San Quentin CA 94974

3

4          United States District Court — Eastern

5

6  In re; to the matter of          Case No.

7  Steven Wayne Bonilla's          The Court Must Issue an Order to Show

8  Void Judgment of Alameda        Cause or the Court Judge and Court Clerk

9  County Superior Court,          are acting in concert with the Conspiracy

10 Cas: No. H-12210-A.             to Murder the Petitioner Under the

11                                  Color of Law and Authority.

12

13              Claim I — Legal Argument

14      The Court held in People v Romero, 8 Cal. 9th 728, as the means by

15  which a judicial preeding is instituted, the issuance of an order to

16  show-cause is [MANDATORY, NOT OPTIONAL]. [Cal. Penal Code § 1476] states

17  that any court or judge authorized to issue an order to show cause,

18  (pursuant to Cal. Const. Art. VI, § 10), to whom a petition therefor is presented,

19  "MUST," if it appears that the writ ought to issue, grant the same

20  without delay. This Court, (Romero), has confirmed this

21  is a statutory COMMAND; If a petition makes a prima facie

22  showing for relief -- that is whether facts that, if true, entitles

23  the Petitioner to Relief, Wherefore, surely if the Court lacks subject

24  matter jurisdiction the Petitioner is [ENTITLED TO RELIEF]. That

25  the return MUST be responsive to the alleged claim that the

26  federal gr and jury subpoena, supposedly issued, February 19,

27  1988, from which all of the evidence in the case is the fruit,

28  thereof, was never admitted into evidence. Which is all

                        —1—

1  inadmissible pursuant to Rule 403 of the Evidence Code.

2  The function of the order to show cause is to institute

3  a preceeding in which issues of fact are to be framed and decided.

4      The issuance of the order to show cause creates a "CAUSE"

5  thereby triggering the state constitutional requirement that the

6  cause be resolved in writing with reason stated [Cal. Const. art. VI, § 14].

7      Once the issuance has been joined by way of a return and

8  traverse, THEN AND ONLY THEN, the Court must determine whether

9  an evidentiary hearing is needed. But when the return effectively

10  acknowledges or admits that the subpoena was never admitted into

11  evidence, there is no subject matter nor subject matter jurisdiction.

12  Therefore, this Court must vacate the judgment and immediately

13  release the innocent Petitioner from unlawful custody.

14              Claim II - Legal Argument

15      A void order or judgment is subject to collateral attack at any time.

16  and in any place [148 Cal. App. 2d 845]. Therefore, this Reviewing Court's

17  jurisdiction is limited to reversing the trial Court's void judgment;

18  And any other judgment, order, or transfer would be without subject

19  matter jurisdiction, is void on its face [35 Cal. 4th 180] and in violation

20  of established law denying transfer, [573 F. Supp. 341, 344; 94 Cal. App. 4th 836].

21              Relief Sought

22      The issuance of an order to show cause or the Judge and Court Clerk

23  are seen as acting in concert with the Conspiracy to murder the Petitioner.

24              Verification

25      I declare under penalty of perjury that the foregoing is true

26  and correct pursuant to 28 USC § 1746 on August 29, 2018.

27                          Respectfully Submitted

28                          Steven Wayne Bonilla

-2-

1  COMPLAINT BY A PRISONER UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. § 1983

2  Name: __BONILLA_____ __STEVEN___ __W__

3  _____(Last)_____ _____(First)_____ _____(Middle Initial)_____

4  Prisoner Number: __J-48500__

5  Institutional Address: __SAN QUENTIN STATE PRISON__

6  __SAN QUENTIN CA 94974__

7

8  UNITED STATES DISTRICT COURT

9  ~~NORTHERN~~ Eastern DISTRICT OF CALIFORNIA

10  __STEVEN WAYNE BONILLA__ )
   (Enter your full name.)

11  )

12  vs.  )  Case No. _____
   )  (Provided by the clerk upon filing)

13  _Francisco W. Barclay and Modoc_ )  COMPLAINT UNDER THE
   )  CIVIL RIGHTS ACT,
14  _County Court Clerks, John Doe_ )  42 U.S.C. § 1983, 1981, 1985, 1986
   )  18 USC § 241, 242
15  _1-15_____ )
   (Enter the full name(s) of the defendant(s) in this action.)  )

16  )  DEMAND FOR A JURY TRIAL AND
   TO BE PRESENT AT SUCH TRIAL

17  I. Exhaustion of Administrative Remedies. EXPEDITED REVIEW REQUESTED

18  Note: You must exhaust available administrative remedies before your claim can go forward. The court will dismiss any
19  unexhausted claims. QUESTIONING JURISDICTION

20  A.  Place of present confinement _SAN QUENTIN STATE   PRISON_

21  B.  Is there a grievance procedure in this institution?  YES ☐   NO ☒ N/A

22  C.  If so, did you present the facts in your complaint for review through the grievance

23  procedure?  YES ☐   NO ☒ N/A

24  D.  If your answer is YES, list the appeal number and the date and result of the appeal at each

25  level of review.  If you did not pursue any available level of appeal, explain why.

26  1. Informal appeal: _N/A. This has [nothing to do_

27  _with prison issues, condition nor_

28  _confinement]. No grievance is necessary._

PRISONER COMPLAINT (rev. 8/2015)
Page 1 of 3

1      2.  First formal level: _____

2      _____

3      _____

4      3.  Second formal level: _____

5      _____

6      _____

7      4.  Third formal level: _____

8      _____

9      _____

10    E.   Is the last level to which you appealed the highest level of appeal available to you?

11          YES ☐      NO ☐

12    F.   If you did not present your claim for review through the grievance procedure, explain why.

13    Because the judgment is void on its face and it has just

14    been discovered that the prosecution withheld information

15    which proves that the premeditated crime never took place.

16    **II.  Parties.**

17    A.   Write your name and present address.  Do the same for additional plaintiffs, if any.

18    STEVEN WAYE BONILLA

19    J-48500  3-EY-13

20    SAN QUENTIN, CA 94974

21    B.   For each defendant, provide full name, official position and place of employment.

22    Francisca W. Barclay — judge

23    Mendoc County Court clerks

24    205 S. East Street, alturas, CA 96101

25    _____

26    _____

27    _____

28    _____

## Section III – Claim I

The misuse of 28 USC § 1915 (g) clearly shows blatant bias/prejudice against pro se capital case litigant, a minority class citizen. Such bias/prejudice in violation of the equal protection clause of the Fourteenth Amendment stems from the defendants. (court/Judges and court clerks), advocating from the bench in a clear pattern of practice of avoiding the jurisdictional question, when challenged to prove jurisdiction of subject matter and of person to exist, to purport their own agenda and establish an underground POLICY OF ATTAINDER. Such underground/unconstitutional hidden agenda, knowingly deprives the Petitioner of his guaranteed Constitutional Rights to EQUAL PROTECTION OF THE LAW, DUE PROCESS, and meaningful access to the courts for the filing of a grievance to the government for redress when challenging the courts lack of jurisdiction. Petitioner states for the record, "Prisoner's Rights do not stop at the prison's gates," as the defendants have assumed, and seek to establish ATTAINDER POLICIES.

The Equal Protection Clause of the Fourteenth amendment of the United States Constitution secures every person within a States jurisdiction against intentional and adversary discrimination, whether occasioned by statutes express terms, (28 USC § 1915 (g)), or by its improper execution through constituted agents;

-1-

[260 US 441] not to first make a determination under 28 USC §1915 (a)(3), which calls for the court to prove that the trial court acquired subject matter jurisdiction and of person, prior to the court proceeding any further, [116 F.2d 449]. 28 USC § 1915 (a) "Proceeding in forma pauperis" is the controlling factor which must be determined prior to the determination of declaring the Petitioner a vexatious litigant under 28 USC §1915 (g) and charging the Petitioner with 6 (six) filing fees per 28 USC § 1915 (b) as a way of punishing him and to prevent him from any further attempts to challenge the court's lack of jurisdiction and authority, [170 F.3d 769].

The Petitioner has been intentionally treated differently from other similar situations where the court's lack of jurisdiction has been challenged. There is no rational basis for the difference in such treatment, [448 US 336]. Other than for being politically disfavored for unfair treatment, the differential treatment the Petitioner has been given is due to being an indigent pro se, condemned state prisoner on death row, a very unpopular group, even if evidence proves that he was falsely convicted. Being a member of this very unpopular group has put the Petitioner at the hands of the government actors, who have deprived him of his civil rights by the courts/judges and court clerks, knowingly giving or implementing adverse rulings which are clear malicious abuse of the legal process, which such an agenda does not comport to nor is sanctioned by the law to proceed without

1  jurisdiction once challenged. [505 F.2d 1026; 100 S.Ct 2502]. Such
2  rulings are a pretence to accomplish a purpose of deprevation
3  of rights, and an ulterior motive of "ATTAINDER". Judges
4  rule adversly and "BY DESIGN", without authority of
5  jurisdiction, misapply the law, using case law which has
6  been reversed by the U.S. Supreme Court, including Judge
7  Yvonne Gonzalez Rogers claiming that the Petitioner's
8  challenge of the court's lack of jurisdiction of subject
9  matter due to the subpoena, from which all of the
10 evidence in the case is the fruit, thereof, which was
11 never admitted into evidence because it never existed,
12 as being a frivolous allegation. yet, she never proved the
13 claim to be false or frivolous, all consciously creating
14 a pattern of "ATTAINDER" and clear obstruction of Justice /
15 Due Administration of the law, in violation of the
16 "Equal Protection Clause" of the United States Constitution,
17 while acting under color of authority. which is motivated
18 by their desire to punish one based on personal animus.
19 Their "selective treatment is based on malicious or bad
20 intent to injure the Petitioner even though he was fraudulently
21 convicted by the Prosecution claiming that a premeditated murder
22 took place when the victim's 7 (seven) missing teeth and his
23 obliterated nose contradicts the Prosecution key and only
24 witness, Brad Reyes, perjured testimony. who failed to disclose
25 the fact that he beat the victim to death. [638 F.2d 776, 779].
26              Section III - "By Design"
27 All said rulings, which falsely apply law, misquote,
28 and use of reversed case law for the specific purpose of

1  of malicious abuse of the legal process under color of
2  authority, as well as a form of subterfuge to promulgate
3  a hidden "agenda of "ATTAINDER". Such rulings include,
4  Petitioner not proving a prima facie showing, which is
5  absolutely proven by the record, which is preposterous. And
6  due the fact of the Petitioner having entered as exhibits:
7  (1). Declarations of the Federal Bureau of Investigation (FBI)
8  and the United States District Attorney's Office, under oath
9  and under a court order in Federal case No. C-02-0636 MHP
10  that no such federal grand jury subpoena, supposedly
11  issued February 19, 1988, ever existed. It is universally
12  known, what never existed, is impossible to have ever
13  been admitted into evidence. Thus, pursuant to Rule 403
14  of the Evidence Code, such proffered evidence is inadmissible.
15  (2). The fraudulent February 19, 1988 subpoena given to
16  the Petitioner to deceive him, has been shown in exhibits
17  that the signature of AUSA Robert D. Ward is a photocopy
18  taken from a previous subpoena signing. Proving that the
19  Prosecution fabricated a forged subpoena to fraudulently
20  conceal their illegal search and seizure of the Petitioner's
21  telephone records in violation of the Fourth Amendment.
22  (3) The exhibits included a copy of the autopsy report
23  which reported the nose having been crushed flat and
24  the forensic dentist report which reported the victim
25  had 7 (seven) of his teeth knocked out. Which contradicted
26  Brad Keyes testimony of the events leading up to the
27  victim's death. Brad Keyes purposely omitted from his
28  testimony that he beat the victim to death by

4-

1  repeatedly punching the victim in the face after he had
2  been subdued and his mouth duct taped shut.
3     (4) The exhibits included the declaration of Reverend Gregory *
4  Kuehn who claimed that Prosecutor Jon Goodfellow admitted to
5  the Reverend that the reason he charged the Petitioner with a
6  premeditated murder, was to appease the news media
7  from claiming that Alameda County District Attorney's
8  Office was discriminating against Blacks by only sentencing
9  Blacks to death. This coupled with the fact that Brad Keyes'
10 testimony had to have been coerced in what to say or more
11 specifically to not disclose the beating he had given the
12 victim that caused his death. Which not only proves
13 that there was no premeditated murder but the entire
14 crime of premeditated murder was fabricated by the
15 Prosecutor to appease the news media by fraudulently
16 convicting the Petitioner because he is ethnically white *
17    (5). The above allegations have been all admitted to by
18 Alameda County District Attorney Nancy O'Malley. Who was
19 properly served with a petition/Contractual Settlement
20 Agreement demanding a response. Which the demand
21 was ignored and pursuant to the Doctrine of Acquiescence
22 was admitted. Which was also PREVIOUSLY SUPPLIED TO
23 THE COURT.
24    When Respondent, District Attorney Nancy O'Malley, refused
25 /failed to deny Petitioner's "VERIFIED" allegations, pursuant
26 to F.R.C.P. Rule 8(b)(6) "Effect of Failing to Deny", the
27 allegations are admitted if a responsive pleading is
28 required and the allegations are not denied (with proof

-5-      *See Exhibit A

1 on the record that the February 19, 1988 federal grand
2 jury subpoena was admitted into evidence). Rule 8
3 (b) (2) requires that a denial [MUST] respond fairly
4 to all allegations.
5    These "VERIFIED" documents clarifying beyond any
6 reasonable doubt all of the Petitioner's allegations are
7 more than mere speculation, they are "VERIFIED" proven
8 facts that cannot be disputed. Because when
9 judgment is attacked collaterally, jurisdiction of the
10 court must be determined by judgment role/record
11 ALONE, [33 Cal. 505]. This complete disregard of "VERIFIED"
12 exhibits and documents are all a clear showing of
13 Petitioner's allegations/claims to be true and correct.
14 Any and all reckless disregard of these "VERIFIED" exhibits
15 is inexcusable, but shows a "DESIGN PATTERN OF ATTAINDER"
16 by blantantly dismissive or erroneously ruling to apply
17 28 USC § 1915 (g) "Vexatious Litigant" to bar the Petitioner
18 from any and all access to the courts is subtile of
19               "ATTAINDER!"
20    The court has already created a framework to balance the
21 burden of Constitution litigation against the rights of
22 victim's. Counties, for example, are not held strictly
23 liable for Constitutional torts committed by their officials.
24 But in the context of the claim at issue HERE A COUNTY
25 IS LIABLE when it indiscriminately delegated authority
26 to a judge who is free to use that authority in a
27 VINDICTIVE AND DISCRIMINATING MANNER. [475 US 469,
28 482]. Who has deliberately and intentionally refused/

failed to follow and properly administer the law. Where the statutes have created a frame work to balance the burden of Constitutional litigation against the rights of victims. These clearly valid statutes that frame the litigation process are Penal Code §1473 et seq, and 18 USC §2241 et seq.. The frame work for this litigation is even further outlined and simplified in People v Romero (1994) 8 Cal. 4th 728, and in People v Duvall (1995) 9 Cal. 4th 464].

To begin the litigation process the courts mini-sterial DUTY TO ISSUE AN ORDER TO SHOW CAUSE is so simple to perform, that the court held in In re Sena, 94 Cal. 4th 836; 115 Cal. Rptr. 2d 22, that a petition for writ of Habeas Corpus should be ruled upon by dispatch because such petitions were time sensitive under Penal Code §1476. That a prima facie case for relief - that is whether it states facts that, if true, entitles the Petitioner to relief. [8 Cal. 4th 728]. As a MATTER OF LAW, PETITIONER'S FACTUAL ALLEGATIONS MUST BE TAKEN AS TRUE. WHEREFORE, HIS FACTUAL CLAIM(S) STATING A PRIMA FACIE CASE FOR RELIEF HAS BEEN ESTABLISHED and prevails until contradicted and over come by other evidence advocated in the Respondent's return. Where the petition has been "VERIFIED", the court/Judge cannot deny the facts as true without them having been first contradicted in the Respondent's return, Which must fairly respond to the substance of the allegations.

-7-

## Claim III

A party cannot be precluded from raising the question of jurisdiction at any time and in any place. [67 F.R.D. 22; 148 Cal. App. 2d 845; 273 Cal. App. 2d 176; 49 US 495]. Because the judgment is a NULLITY, a motion attacking jurisdiction is not challenging the terms of the judgment nor the conditions of confinement any judgment, order, transfer by a court lacking subject matter jurisdiction, is void on its face; And the Reviewing Courts' jurisdiction is LIMITED to reversing the trial court's void judgment. [35 Cal. 4th 180; 759 F. 2d 869].

Unless, this court, or any court, can prove that the February 19, 1988 subpoena was admitted into evidence, on the record, it has a DUTY to pronounce the trial court's judgment a NULLITY. [27 Cal. 300], forthwith. [377 F. 2d 199]. And to release the innocent Petitioner immediately. [356 F. 2d 654; F.R.C.P., Rules 12(h)(3) and 60(b). Which the defendant has failed to do, in concert, to aid the Prosecution's Civil Conspiracy to appease the news media. [See Exhibit A for defendants response].

### Section IV — Relief Sought

(1) Wherefore, the Petitioner demands that the defendants cease and desist from any overt or covert application of "ATTAINDER," which the United States' Supreme Court has ruled, such use of "ATTAINDER POLICIES" to deny minority class of citizen of his due process and EQUAL PROTECTION OF THE LAW in any form is unlawful and unconstitutional, and flagrantly shows a clear class of Obstruction of Justice and Due Administration of law under color of authority, which is involuntary servitude and slavery

-8-

1  for capital gain, all in violation of the United States
2  Constitutional Amendment Thirteen, and can and must be
3  construed as crimes against humanity.
4     (2). Either prove the February 19, 1988 subpoena was admitted
5  into evidence, on the record, which is impossible to do,
6  or pronounce the judgment a NULLITY and immediately
7  release the innocent Petitioner. For this Honorable Court
8  to grant any and all relief it deems necessary and just for
9  fraudulently imprisoning, in collusion with the
10 prosecution, to murder the innocent Petitioner, Steven
11 Wayne Bonilla, to appease the news media, [See Exhibit
12 A], in Alameda County Superior Court, Case No. H-12210-A.
13               Verification
14    I declare under penalty of perjury that the foregoing is
15 is true and correct, including exhibits, pursuant to 28 USC § 1746.
16
17  Dated: 9-14-18
18                    Respectfully Submitted
19                    Steven Wayne Bonilla
20
21
22
23
24
25
26
27
28

-9-

## Addendum

The Court held in Hickory v Roby, [273 Cal. App. 2d 752], where a judgment has been obtained through FRAUD, it may be set aside, THOUGH LONG SINCE FINAL, by an independent suit in equity, the remedy is available to a party who has been deprived of an opportunity, to present his case or obtain a fair adversary proceeding. Along with a party cannot be precluded from raising the JURISDICTIONAL QUESTION at any time and in any place for any reason. [67 F.R.D. 22, 25; 49 US 495; 148 Cal. App. 2d 845; 273 Cal. App. 2d 176].

The court clerk has unlawfully denied the Petitioner of due process and meaningful access to the court by returning the Petitioners submission, not filed nor processed pursuant to an order by a Judge who lacked authority and subject matter jurisdiction. A Judge cannot ignore, nor proceed until jurisdiction has been proven to exist on the record. [474 F. 2d 215; 505 F. 2d 1026; 102 F. 2d 188; 37 F. Supp. 150]. By the Court Clerk returning the submissions, or transferring them, has acted in concert, with the Judge, to deprive the Petitioner of his guaranteed Constitutional Rights to due process, equal protection of the law, and meaningful access to the Court.

### Verification

I declare under penalty of perjury that the foregoing is true and correct, including exhibits, pursuant to 28 USC §1746.

Dated: 9-14-18

Respectfully Submitted

Steven Wayne Bonilla

*EXHIBIT A*

Declaration Of Reverend Gregory Kuehn

I, Reverend Gregory Kuehn, hereby declare as follows:

1.   My name is Reverend Gregory Kuehn, I am the Pastor of the Sierra Bible Church in
     Reno, Nevada, and I briefly provided Bradley Keyes with spiritual counseling just prior to
     his surrender to the authorities in Pleasanton, California, in 1988. I also testified at Mr.
     Bonilla's trials in 1992 and 1994.

2.   I met Mr. Keyes through his wife's family members, who were parishioners at the church.
     Mr. Keyes was a member of our congregation for a short period of time right before
     turning himself into police custody for the killing of Jerry Harris. At Mr. Keyes request, I
     drove with him from Reno, Nevada, to Pleasanton, California, where I accompanied him
     into the building where he surrendered himself.

3.   During Mr. Keyes surrender and booking, I had the opportunity to meet and speak with
     Assistant District Attorney Jon Goodfellow. At one point I was alone with Mr.
     Goodfellow in a room at either the District Attorney's office or a police station. It was
     during this time that Mr. Goodfellow revealed to me his intention to seek the death
     penalty against Steven Bonilla and his co-defendant, Williams Nichols.

4.   When I asked Mr. Goodfellow why he felt it was necessary to use the death penalty in the
     prosecution of this crime, he told me that he needed to get the critics of the district
     attorney's office off his back. Mr. Goodfellow went on to explain that his office was
     being scrutinized for its use of the death penalty against minority defendants and that they
     needed to put "more white people" on death row to balance the population disparities and
     silence the critics. According to Mr. Goodfellow, his office would not have otherwise
     sought the death penalty against either Mr. Bonilla or Mr. Nichols.

5.   This discussion that I had with Mr. Goodfellow never came up during my previous
     conversations with anyone because no one asked me about it and I didn't think it was
     important. Herbert Duzant, an investigator with the Federal Public Defender office, was
     the first person to ask me whether Mr. Goodfellow ever mentioned the reasoning behind
     the District Attorney Office's decision to seek death against Mr. Bonilla. Had I been
     asked earlier, I would have provided Mr. Bonilla's previous representatives with the same
     details and I would have testified to it on the stand at both trials.

     I declare under penalty of perjury that the foregoing is true and correct to the best of my
knowledge and that this declaration was executed in Washoe County, Nevada, on June 30, 2014.

                                                      Reverend Gregory Kuehn

1  Steven Wayne Bonilla / Petitioner
2  J-48500   3-EY-13
3  San Quentin, CA 94974
4
5                United States District Court
6                Eastern District of California
7
8  In re: to the matter of        Case No.
9  Steven Wayne Bonilla's         — Expedited Review Requested —
10 Void Judgment.                 IT IS A QUESTION OF JURISDICTION
11
12     A party cannot be precluded from raising the QUESTION OF
13 JURISDICTION at any time and in any place. [67 F.R.D. 22; 148 Cal. App. 2d
14 845; 273 Cal. App. 2d 1176]. A motion attacking jurisdiction is not
15 challenging the terms of the judgment nor the conditions of
16 confinement. Because the judgment is a NULLITY. Wherefore, any
17 judgment or order by a court lacking subject matter jurisdiction
18 is void on its face; And this Reviewing Court's jurisdiction is
19 LIMITED to reversing the trial court's void judgment. [35 Cal. 4th 180].
20     Unless this Court, or any court, can prove that the 2-19-88
21 subpoena was admitted into evidence, it has a DUTY to pronounce
22 the trial court's judgment a NULLITY, [27 Cal. 300], forthwith,
23 [377 F. 2d 194] and to release the innocent Petitioner immediately.
24 [356 F. 2d 654; Federal Rules of Civil Procedure 12(h)(3) and 60(b)].
25     Verification — I declare under penalty of perjury that the foregoing
26 is true and correct pursuant to 28 USC §1746 on 9-14-18.
27                              Respectfully Submitted
28                              Steven Wayne Bonilla

Steven Wayne Bonilla / Petitioner

J-48500, 3-EY-13, San Quentin CA 94974

United States District Court - Eastern

In re: to the matter of        Case No.

Steven Wayne Bonilla        Filing Fees Per 28 USC § 1915 (a)(3)

Pursuant to 28 USC § 1915 (a)(3) and the Court's holdings in Hych v Christensen [170 F. 3d 769], that the § 1915 (a)(3) determination must precede (and controll) the § 1915 (b) determination of the filing fee. The issue of § 1915 (a)(3) to first be determined is the Court's lack of jurisdiction of subject matter, which cannot be proven to exist on the face of the record; because the 2-19-88 subpoena, from which all of the evidence in the case is the fruit, thereof, was never admitted into evidence. Because it never legally existed. Thus, pursuant to Rule 403 of the Evidence Code, NONE of the proferred evidence is lawfully admissible. With the trial court's lack of jurisdiction to render the judgment this Honorable Court has a DUTY to pronounce the judgment a NULLITY [27 Cal. 3d 0], forthwith, [377 F. 2d 194]. Therefore, NO FILING FEE is required when the court is under a DUTY to vacate the judgment and to immediately release the innocent Petitioner pursuant to [356 F. 2d 654; F.R.C.P. § 12 (h)(3), 60 (b)(4) and (3) FRAUD UPON THE COURT].

Verification—I declare under penalty of perjury that the foregoing is true and correct pursuant to 28 USC § 1746 on      9-14-18

Respectfully Submitted

Steven Wayne Bonilla